

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**


**Dated: April 02, 2026.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-52804-CAG |
| | § | |
| BLACKSTONE CLAIM SERVICES, INC. | § | |
| | § | |
| | § | CHAPTER 11 |
| | § | Subchapter V |
| Debtor. | § | |

| | | |
|---|---|---|
| BLACKSTONE CLAIM SERVICES, INC. | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | ADVERSARY NO. 25-05084-CAG |
| | § | |
| AARON MCKEE, | § | |
| Defendant. | § | |
| v. | § | |
| | § | |
| GARY H. PENNINGTON, | § | |
| Third-Party Defendant. | § | |

<u>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF BLACKSTONE CLAIM SERVICES, INC.'S RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS MCKEE'S COUNTERCLAIMS (ECF NO. 22)**</u>

Came on to be considered Defendant's Answer, Affirmative Defenses, Counter-Claims and Third Party Claim to Plaintiff's First Amended Complaint ("Counterclaim(s)") (ECF No. 17),[1] Plaintiff Blackstone Claim Services, Inc.'s Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Defendant's Counterclaims ("Motion to Dismiss") (ECF No. 22), Third-Party Defendant Gary H. Pennington's Joinder in Part to Plaintiff's Motion to Dismiss ("Joinder") (ECF No. 27), and Defendant's Response to Plaintiff's Motion to Dismiss ("Response") (ECF No. 31). The Court set the Motion to Dismiss for hearing heard oral argument and took the matter under advisement. (ECF No. 32). For the reasons stated in this Order, the Motion to Dismiss is GRANTED in part and DENIED in part.

#### JURISDICTION

### I. McKee's Claims Against Blackstone

The Court has subject matter jurisdiction over Defendant Aaron McKee's ("McKee") Counterclaims against Blackstone Claim Services, Inc. ("Blackstone") pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This case is referred to the Court under the District Court's Order on Reference. Matters referred to a bankruptcy court may be "core" or "non-core" under 28 U.S.C. § 157(b).

"Looking at the parties' pleadings as they existed at the time of removal, the first issue to be addressed is whether the court has jurisdiction over the parties' state court proceeding and, if so, whether each cause of action asserted within that proceeding is core or non-core." ***Legal Xtranet, Inc. v. AT&T Mgmt. Servs., L.P (In re Legal Xtranet)***, 453 B.R. 699, 704 (Bankr. W.D.

---

[1] "ECF" denotes electronic filing docket number in Adversary No. 25-05084-cag unless otherwise indicated.

Tex. 2011). "A matter falls within the court's subject matter jurisdiction if the matter arises under a provision of title 11, or if the matter arises in or is related to the bankruptcy case." *Id.* at 704.

First, "'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11." *Id.* Next, "'Arising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside of bankruptcy." *Id.* "Claims that initially arose in a state-court proceeding, long before the debtor filed for bankruptcy did not 'arise under' or 'arise in' a title 11 proceeding." *Parkhouse v. Johnson (In re Johnson)*, No. 11-06020, 2012 WL 1110342, at *6 (Bankr. W.D. Tex. Apr. 2, 2012) (citation modified). In such cases, the causes of action obviously "could (and in fact did) exist absent [the debtor's] bankruptcy filing." *In re Legal Xtranet, Inc.*, 453 B.R. at 709. Last, "A matter is related to the bankruptcy when the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *GDC Investco LP v. Mazav Mgmt., LLC (In re GDC Technics, LLC)*, No. 25-05063, 2026 WL 227170, at *3 (Bankr. W.D. Tex. Jan. 27, 2026) (citation modified). Section 1334's reference to matters "related to" bankruptcy cases primarily applies to claims against the debtor that encompass tort, contract, and other legal claims "that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum." *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995). "A secondary purpose is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *Id.*

Here, McKee asserts 11 U.S.C. § 523(a) claims against Blackstone. Therefore, the Court has jurisdiction over those Counterclaims arising under title 11. Additionally, McKee asserts state-

3

law causes of action against Blackstone that could, and in fact did, exist outside of Blackstone's bankruptcy. Therefore, the Court does not have "arising in" jurisdiction over McKee's state law claims against Blackstone. McKee's state-law claims against Blackstone, however, could conceivably have an effect on Blackstone's estate being administered in bankruptcy. McKee brought tort and contract claims against Blackstone in state court about six months before Blackstone filed for bankruptcy. Were it not for Blackstone's bankruptcy, the proceeding would have continued to be a stand-alone lawsuit in state court. Given that Blackstone filed for bankruptcy, however, the lawsuit can conceivably affect the administration of the bankruptcy estate. Therefore, the Court has related to jurisdiction over McKee's state-law claims against Blackstone.

Next, the Court must determine whether each claim before it is core or non-core. ***Exec. Benefits Ins. Agency v. Arkison***, 573 U.S. 25, 33 (2014). If the matter is core, 28 U.S.C. § 157(b) authorizes the bankruptcy court to hear, determine, and enter final judgment on the claims. If the matter is non-core, the parties must consent to the bankruptcy court's jurisdiction to hear, determine, and enter final judgment on the claims. 28 U.S.C. § 157(c).

McKee's Counterclaims against Blackstone are core. "The fact that a claim arises under state law is not dispositive, as 'many truly bankruptcy issues, like the determination of the basis for creditors' claims, turn on state law.'" ***Gomez v. Saenz (In re Saenz)***, No. 13-07024, 2016 WL 9021733, at *2 (Bankr. S.D. Tex. Dec. 19, 2016) (quoting ***Southmark Corp. v. Coopers & Lybrand***, 163 F.3d 925, 930 (5th Cir. 1999)), *aff'd*, 899 F.3d 384 (5th Cir. 2018). Further, a matter is core "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." ***Wood v. Wood (In re Wood***, 825 F.2d 90, 97 (5th Cir. 1987). "A claim based on state created rights, which could have proceeded in state

4

court had there been no bankruptcy, is likely not core." *In re Saenz*, 2016 WL 9021733, at \*2. Dischargeability actions, however, are core matters. 28 U.S.C. § 157(b)(2)(I).

McKee seeks the Court's determination of the basis for its claim in Blackstone's underlying bankruptcy. *See Nikoloutsos v. Nikoloutsos (In re Nikoloutsos)*, 199 F.3d 233, (5th Cir. 2000) (allowing adversary complaints may qualify as informal proofs of claims). The Court has jurisdiction to determine Blackstone's liability, as well as the amount of that liability, in connection with a dischargeability proceeding. "Because the determination of the validity and amount of a nondischargeable debt [is] allowed by 11 U.S.C. § 523(a) and § 157(b)(2)(I) and are also directly intertwined with the determination of discharge," the Court may issue final judgment in this matter. *In re Saenz*, 2016 WL 9021733, at \*4 (collecting cases).

Nevertheless, the Court finds that McKee has implicitly consented to the Court's issuance of a final judgment in this proceeding. In *Wellness Int'l Network, Ltd. v. Sharif*, the Supreme Court held that bankruptcy courts may adjudicate Article III claims when the "parties knowingly and voluntarily consent to adjudication." 575 U.S. 665 (2015). The Court explained that "the key inquiry" is whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." *Id.* at 685. A bankruptcy court's determination of whether a party has consented to its jurisdiction requires "a deeply factbound analysis of the procedural history" in the proceeding. *Id.* at 685.

Here, Blackstone originally filed this case in state court pre-petition. (ECF No. 14 at 1). After filing its bankruptcy petition on November 19, 2025, Blackstone removed the state court proceeding to this Court pursuant to 28 U.S.C. § 1452(a). (ECF No. 3). McKee did not move to remand the case. After Blackstone filed its Complaint and McKee filed his Answer with Counterclaims, the Court entered its Order Requiring Statement Regarding Consent. (ECF

No. 18). Blackstone and Third-Party Defendant Gary H. Pennington ("Pennington") both consented to the entry of final orders and a final judgment by the Court in this Adversary Proceeding. (ECF Nos. 21, 24). On February 17, 2026, McKee filed his Statement Regarding Consent, stating that he does not consent to the Court's entry of final orders and judgment in this case. (ECF No. 25).

McKee has knowingly and voluntarily consented to the Court's adjudication of this Adversary Proceeding. McKee received notice that he should file a statement of consent regarding whether he consented to the final orders and judgment entered by this Court. (ECF No. 18). Although McKee declined to consent, he responded to Blackstone's Motion to Dismiss, requesting that the Court deny the Motion to Dismiss and allow McKee's Counterclaims to remain in this Court. (ECF No. 31). In other words, McKee "still voluntarily appeared to try the case before the non-Article III adjudicator." *Sharif*, 575 U.S. at 685. Further, McKee has gone "so far as to affirmatively invoke the bankruptcy court's jurisdiction" by filing Counterclaims in this case and requesting the Court deny Blackstone's dispositive motion. *Ward v. Cross Keys Bank (In re Karcredit, LLC)*, No. 21-30649, 2022 WL 4103265, at *4 (5th Cir. Sept. 7, 2022) (per curiam).

The Court finds: (1) McKee did not request the Court to remand this case; (2) McKee argues the merits of his Counterclaims; (3) McKee cited no jurisdictional issues in either his Counterclaims or in his Response to Blackstone's Motion to Dismiss; (4) McKee is represented by experienced bankruptcy counsel; and (5) McKee voluntarily participates in the proceedings, including seeking affirmative relief by filing Counterclaims and opposing Blackstone's Motion to Dismiss, while failing to express limitations on its consent. (ECF No. 31). In fact, McKee defends against dismissal of his Counterclaims under Federal Rule of Civil Procedure 12(b)(1), stating "Blackstone also filed a Motion to Dismiss under Rule 12(b)(1)—asserting that the very Court it

chose to remove this lawsuit to somehow lacks jurisdiction to hear McKee's counterclaims." (ECF No. 31 at 5). Therefore, the Court finds that McKee has knowingly and voluntarily consented to this Court's jurisdiction to enter final orders and judgments in this Adversary Proceeding.[2]

Venue is proper under 28 U.S.C. §§ 1408 and 1409. Finally, a court has jurisdiction to determine whether it has subject matter jurisdiction. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[A] federal court always has jurisdiction to determine its own jurisdiction.").

## II.     McKee's Claims Against Pennington

The Court lacks subject matter jurisdiction over McKee's third-party claims against Pennington. McKee's third-party claims against Pennington do not allege any cause of action pursuant to a statutory provision of title 11. Rather, McKee alleges purely state-law claims. Therefore, the Court lacks "arising under" jurisdiction. Additionally, McKee initiated purely state-law causes of action against Pennington in a state-court proceeding on May 21, 2025. (ECF No. 3 at 1). Blackstone filed its bankruptcy petition on November 19, 2025, which was six months after McKee filed his claims against Pennington. (Case No. 25-52804, ECF No. 1). McKee's claims "could (and in fact did) exist" outside of the underlying bankruptcy. Therefore, the Court does not have "arising in" jurisdiction.

Bankruptcy courts usually lack "related to" jurisdiction in connection with third-party complaints. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995). McKee's claims against Pennington involve litigation between two non-debtors. Even if McKee prevails on every claim asserted against Pennington, there would be no conceivable effect on the

---

[2] To the extent that McKee disagrees, he may move to withdraw the reference. Fed. R. Bankr. P. 5011; *see, e.g.*, *Unnamed Individuals v. The Academy, Inc. (In re The Academy, Inc.)*, 288 B.R. 286, 289 (Bankr. M.D. Fla. 2002) ("[A] party may move for an order of the district court withdrawing the reference to the bankruptcy court."); *Mihov v. United States*, 655 B.R. 584, 589–90 (S.D. Ind. 2023) (citation modified) (discussing a motion to withdraw the reference must be "timely" filed "either as soon as possible or at the first reasonable opportunity after the moving party had notice of the grounds for withdrawal").

administration of the bankruptcy estate. *See **In re Redf Mktg., LLC***, 536 B.R. 646, 663 (Bankr. W.D. N.C. 2015) (finding the same). Pennington's liability to McKee would not "alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively)" or impact "the handling and administration of the bankrupt estate." ***Id.*** (quoting ***Celotex Corp. v. Edwards***, 514 U.S. 300, 309 n.6 (1995)). Therefore, the Court lacks "related to" jurisdiction over McKee's claims against Pennington.

Accordingly, the Court lacks subject matter jurisdiction over McKee's third-party claims against Pennington.[3] The Court, therefore, dismisses McKee's third-party claims against Pennington.

## BACKGROUND

During what is known as "Snowmageddon" of February 2021, temperatures in Bexar County, Texas, dropped below 32 degrees for several days. (ECF No. 17 at 5). During those days, the pipes in McKee's house were frozen and damaged by subfreezing temperatures. (*Id.*). As temperatures warmed, the pipes leaked, causing extensive damage to McKee's home and its electrical system. (*Id.* at 6).

On February 22, 2021, McKee entered into a Public Insurance Adjuster Agreement ("Agreement") with Pennington's company, Blackstone Claim Services, Inc. ("Blackstone"). (ECF No. 12, Ex. A). The Agreement stated that McKee, the insured, owned an insurance policy by Chubb Lloyds Insurance of Texas ("Chubb"), and retained Blackstone "to assist in the

---

[3] The Court may not exercise supplemental jurisdiction over McKee's third-party claims. ***In re Walker***, 51 F.3d at 573. At the hearing, the parties discussed the abstention doctrine. (Hearing on Motion to Dismiss, Audio 8:41:50). But "a court that lacks jurisdiction over a matter cannot abstain from deciding that matter." ***Cody, Inc. v. Cnty. of Orange (In re Cody, Inc.)***, 338 F.3d 89, 94 (2d Cir. 2003); *see* 28 U.S.C. § 1334(c) (emphasis added) ("[N]othing in his section prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding *arising in or related to a case under title 11*."). Additionally, McKee conceded that the Court should dismiss McKee's third-party claims against Pennington. (Hearing on Motion to Dismiss, Audio 8:58:50, April 1, 2026).

preparation, adjustment, and presentation of all applicable claims" for the frozen pipes and water damage. (*Id.*). McKee agreed to pay Blackstone 10% commission "of the amount of all settlements, awards, or recovery of funds collected, adjusted, or otherwise received and/or issued" by Chubb to McKee. (*Id.*).

After inspection of McKee's damaged home, Blackstone assessed over $7 million in damages. (ECF No. 31). McKee opted to litigate the claim against Chubb, which lasted years. (*Id.*). In McKee's pursuit of a claim against Chubb, McKee designated several experts to testify to the extent of damage to McKee's home. (*Id.*). Chubb moved to exclude the testimony of four witnesses, including Pennington. (*Id.*). After the magistrate judge ultimately ordered the exclusion of Pennington's testimony, McKee and Chubb entered into a settlement agreement for $1,750,000. (ECF No. 12 at 4).

On March 17, 2025, Blackstone filed suit against McKee in state court. (ECF No. 3). After McKee filed counterclaims against Blackstone and third-party claims against Pennington, Blackstone filed its bankruptcy petition under subchapter V of chapter 11 on November 19, 2025. (Case No. 25-52804, ECF No. 1). The state court litigation was removed to this Court on November 26, 2026 (ECF Nos. 1, 3), and Blackstone filed its First Amended Complaint ("Complaint") on January 5, 2026 (ECF No. 12). On January 23, 2026, McKee filed his Answer with Counterclaims against Blackstone and third-party claims against Pennington in this Court. (ECF No. 17). Blackstone moved to dismiss the Counterclaims on February 13, 2026. (ECF No. 22). Pennington joined Blackstone's Motion to Dismiss in part. (ECF No. 27). On March 13, 2026, McKee filed his Response. (ECF No. 31).

The Court set the Motion to Dismiss for a hearing on April 1, 2026, in which it considered the arguments. After consideration thereof, the Court finds that the Motion to Dismiss should be granted in part and denied in part.

<strong>ANALYSIS</strong>

## I. Rule 12(b)(1)

Blackstone argues that McKee's Counterclaims against Blackstone should be dismissed under Fed. R. Civ. P. 12(b)(1). (ECF No. 22 at 6–9).[4] Blackstone asserts that McKee lacks standing to bring Counterclaims in this litigation, and that McKee's claims are too "speculative and conjectural" in nature to constitute an injury fact to confer standing. (ECF No. 22 at 6–7). Therefore, Blackstone argues that the Court lacks subject-matter jurisdiction over McKee's Counterclaims against Blackstone.[5]

McKee, on the other hand, argues that the Court has subject matter jurisdiction because he has alleged more than $3 million in damages for Blackstone's failure to document evidence to support McKee's adjusted claim against Chubb. (ECF No. 17 at 7–9). McKee argues that the remedy for destroyed or lost evidence depends on the degree of culpability of the destroyer, so he has inferred the amount of damages attributed to Blackstone based on Blackstone's assessment of the total claim amount of $7,109,134.26. (*Id.* at 9).

Rule 12(b)(1) provides that a party may challenge the subject matter jurisdiction of a court to hear a case. Fed. R. Civ. P. 12(b)(1). "[S]tanding and ripeness are essential components of federal subject matter jurisdiction" and therefore may be challenged through Rule 12(b)(1). *Morrison v. Sonia (In re Jillian Morrison, L.L.C.)*, 482 F. App'x 872 (5th Cir. 2012) (per

---

[4] The Court shall address only Article III standing as that is what Blackstone pleads under Rule 12(b)(1). (ECF No. 22 at 5–9).

[5] The Court does not have subject matter jurisdiction over McKee's third-party claims against Pennington. The Court's 12(b)(1) analysis is therefore determinative of McKee's Counterclaims against Blackstone.

curiam); *see also **Greathouse v. Cap. Plus Fin. LLC***, 690 F. Supp. 3d 610, 626 (N.D. Tex. 2023) ("Because standing is a central concern of subject-matter jurisdiction, it is properly addressed under Rule 12(b)(1).").

"There are three elements that a plaintiff must prove to establish Article III standing: injury in fact, traceability, and redressability." ***Abraugh v. Altimus***, 26 F.4th 298, 302 (5th Cir. 2022). First, "An injury-in-fact constitutes 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" ***Wendt v. 24 Hour Fitness USA, Inc.***, 821 F.3d 547, 550 (5th Cir. 2016) (quoting ***Lujan v. Def. of Wildlife***, 504 U.S. 555, 560 (1992)). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." ***Spokeo, Inc. v. Robins***, 578 U.S. 330, 340 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" ***Id.*** at 339 (quoting ***Lujan***, 504 U.S. at 560 n.1). "To be sufficiently actual or imminent, the injured plaintiff must suffer 'continuing, present adverse effects' or 'show that he will soon expose himself to the injury' through 'concrete plans' demonstrating his injury is 'certainly impending.'" ***Texas v. United States***, 524 F. Supp. 3d 598, 618 (S.D. Tex. 2021) (quoting ***Lujan***, 504 U.S. at 564 n.2). "[A] plaintiff must demonstrate standing for each claim he seeks to press." ***DaimlerChrysler Corp. v. Cuno***, 547 U.S. 332, 352 (2006).

Here, there is an injury-in-fact for all causes of action.[6] If McKee's allegations are true, McKee was injured, and more than $3 million is owed under the policy. (ECF No. 17 at 7–9). In other words, "Due to Blackstone's [conduct] the McKees have been damaged by the loss of the value he should have received from his insurance policy." (*Id.* at 8). Blackstone claims that

---

[6] The Court will analyze standing only for the three state law causes of action, as McKee brings his § 523(a)(2)(A) and (a)(6) claims to determine the debt arising from these state law causes of action as nondischargeable. (*See* ECF No. 17 at 9–10).

McKee's damages are hypothetical, but Blackstone twists how the word is used in the standing context. (ECF No. 22 at 6–9). The Court asks not whether McKee could definitively prove his alleged damages, but whether he alleges damages that actually occurred. *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."). McKee's alleged injury is not some faraway event that may or may not occur, or, in other words, "hypothetical." According to McKee's allegation, the injury already happened. McKee already suffered damages of more than three million dollars.

Second, "For traceability to exist, 'there must be a causal connection between the injury and the conduct complaint of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 773 (N.D. Tex. 2018) (quoting *Lujan*, 504 U.S. at 560), *aff'd*, F.3d 307 (5th Cir. 2019). This requirement "can be satisfied by showing that the defendant's acts have caused others to react in a way that injures the plaintiff." *Id.*

Here, there is traceability for all causes of action. For the first cause of action, there is a causal connection between Blackstone's representation that "they were capable of properly presenting the claims for the pipe freeze losses to the McKees' Home" and McKee's injury. (ECF No. 17 at 7). McKee alleges, "Blackstone's inability to properly document and preserve claim evidence only became apparent when its expert testimony was stricken by a federal magistrate judge." (*Id.*). Judge Chestney prohibited Pennington from testifying "as an expert as to the reasonable and necessary scope of repairs to the plumbing and electrical systems." (Case No. 22-cv-0110, ECF No. 61 at 12). She reasoned in part, "Pennington testified in his deposition that he believes the entire copper plumbing system in Plaintiffs' home requires complete replacement. But Pennington could not adequately identify the basis of this opinion." (*Id.*) (citations omitted). The

12

Court finds traceability for the first cause of action. McKee's second cause of action asserts that Blackstone was negligent by failing to properly preserve and present evidence regarding McKee's plumbing system. In his third cause of action, McKee claims Blackstone breached its contract with McKee by failing to properly preserve basic evidence and present this evidence for McKee's insurance claim. (ECF No. 17 at 9). There is traceability between McKee's second and third causes of action and McKee's injury for the same reasons stated above. Blackstone's alleged failure to record and preserve evidence for McKee's insurance claim is fairly traceable to McKee's loss in the amount recoverable under his insurance policy.

Third, "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "And this requires plaintiff to show that a favorable decision will likely redress the injury." *Greathouse*, 690 F. Supp. 3d at 628 (citing *Inclusive Communities Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir. 2019)). Here, there is redressability for all causes of action. McKee's injury is monetary for all causes of action. A favorable award of actual damages to McKee will redress the monetary injury. McKee alleges he was not paid enough because of Blackstone's actions. Blackstone paying McKee will redress McKee's injury. Therefore, all of McKee's counterclaims satisfy the elements of standing. These claims will not be dismissed pursuant to Rule 12(b)(1).

## II.    Rule 12(b)(6)

Blackstone also argues for dismissal of McKee's Counterclaims pursuant to Rule 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim for relief

is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). Dismissal is appropriate when the claimant has "failed to 'raise a right to relief above the speculative level." *True v. Robles*, 571 F.3d 412, 418 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (5th Cir. 2007)). "Detailed factual allegations are not required." *Hershey v. Energy Transfer Partners, LP*, 610 F.3d 239, 245 (5th Cir. 2010) (citation modified) (quoting *Iqbal*, 556 U.S. at 678).

Nevertheless, a court should not accept "threadbare recitals of a cause of action's elements supported by mere conclusory statements." *Hershey*, 610 F.3d at 245–46 (quoting *Iqbal*, 556 U.S. at 678). In reviewing whether a pleading states a claim on which relief may be granted, the Court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Robles*, 571 F.3d at 417. In considering Blackstone's Motion to Dismiss pursuant to Rule 12(b)(6), the Court must base its ruling solely on allegations set forth in the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice. *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (per curiam); *Innova Hosp. San Antonio, LP v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).

Most causes of action are subject to Rule 8(a)'s pleading standard. *Iqbal*, 556 U.S. at 677–78. Rule 9(b) establishes a heightened pleading standard for cases where the plaintiff alleges fraud. Rule 9 applies to bankruptcy adversary proceedings under Federal Rule of Bankruptcy Procedure 7009. Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "The Fifth Circuit

has interpreted Federal Rule of Civil Procedure 9(b) strictly, requiring the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." ***Schott, Tr. for Estate of InforMD, LLC v. Massengale***, No. CV-185-759, 2019 WL 4738795, at \*13 (M.D. La. Sept. 27, 2019) (citation modified).

Rule 9(b), therefore, requires the plaintiff to "plead the who, what, when, where, and why as to the fraudulent conduct." ***Life Partner Creditors' Tr. v. Crowley (In re Life Partners Holdings, Inc.)***, 926 F.3d 103, 117 (5th Cir. 2019). Rule 9(b) extends to all claims and allegations of fraud, including claims alleging violations of the Texas Insurance Code and the Texas Deceptive Trade Practices-Consumer Protection Act (the "DTPA"). ***Janssen v. Allstate Vehicle & Prop. Ins. Co.***, No. SA-21-CV-00750, 2021 WL 4200618, at \*1 (W.D. Tex. Sept. 14, 2021). Accordingly, the Court will analyze McKee's fraud claims under the heightened pleading standard of Rule 9(b).

### A. Res Judicata and Collateral Estoppel

Blackstone argues that McKee's Counterclaims are barred under the doctrines of collateral estoppel and res judicata because he settled the underlying insurance claim against Chubb. (*Id.* at 13). McKee argues that res judicata and collateral estoppel do not apply because McKee did not have an adversarial relationship with Blackstone and Pennington in the Chubb litigation. (ECF No. 31 at 10). McKee's acceptance of a settlement in that case has no bearing on his claims against Blackstone and Pennington for failure to comply with their contract, which is the basis of McKee's claims against Blackstone and Pennington in this Court. (*Id.*).

"Federal law determines the re judicata effect of a prior federal court judgment." ***Johnson v. City of*** Houston, 444 F. App'x 26, 30 (5th Cir. 2011) (per curiam) (quoting ***Meza v. Gen. Battery Corp.***, 908 F.2d 1262, 1265 (5th Cir. 1990)). The Fifth Circuit recognizes that "the doctrine of res

15

judicata, in the broadest sense, encompasses two distinct preclusion concepts, claim preclusion (res judicata) and issue preclusion (collateral estoppel)." *Gulf Island-IV, Inc. v. Blue Streak-Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994).

### 1.  Res judicata

Res judicata does not bar McKee's Counterclaims against Blackstone in this Adversary Proceeding. "Res judicata bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Sacks v. Tex. S. Univ.*, 83 F.4th 340, 344 (5th Cir. 2023) (per curiam) (citation modified).

> True res judicata—also called claim preclusion—applies only if: '(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

*Id.* (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005)); *see also Taylor v. Sturgell*, 553 U.S. 880, 898 (2008) ("[O]ur decisions emphasize the fundamental rule that a litigant is not bound by a judgment to which she was not a party."). Critically, a claim cannot be barred by res judicata if it did not exist at the time of the prior proceeding. *Id.* at 345 (citing *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)); *cf. D-1 Enters., Inc. v. Com. State Bank*, 864 F.2d 36, 40 (5th Cir. 1989) (finding res judicata does not apply "where the claim sought to be barred could not effectively have been litigated").

Res judicata does not bar McKee's Counterclaims against Blackstone. First, the parties here are not identical, nor are they in privity. *See* (Hearing on Motion to Dismiss, Audio 8:19:40–8:20:19, April 1, 2026) (conceding privity does not exist between the parties). Second, McKee brings causes of action for DTPA violations, negligence, and breach of contract against

16

Blackstone. (ECF No. 17). These claims were not brought against Chubb in the previous litigation.

(ECF No. 31, Ex. A). Therefore, res judicata does not apply.

2. Collateral Estoppel

"Collateral estoppel prevents parties from re-litigating the same issues conclusively determined between them in a previous action." ***Petro-Hunt, L.L.C. v. United States***, 365 F.3d 385, 396 (5th Cir. 2004). Collateral estoppel precludes litigation of an issue already raised in an earlier proceeding only if: "(1) the issue at stake is identical to the one involved in the earlier action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the judgment in that action." ***Test Masters***, 428 F.3d at 572.

The Court finds that collateral estoppel does not apply. The issue at stake in this case is not identical to that in the earlier action between McKee and Chubb. Here, McKee alleges that Blackstone violated the DTPA, was negligent, and breached the Agreement. These issues were not involved in the Chubb litigation.

Even if it was the same issue, McKee's earlier suit against Chubb was resolved by settlement, not by actual litigation or the determination of any issue. *See **Avondale Shipyards, Inc. v. Insured Lloyd's***, 786 F.2d 1265, 1272–73 (5th Cir. 1986) (reaffirming that consent judgments approving settlements ordinarily do not "give rise to issue preclusion or collateral estoppel"). "[S]ettlements ordinarily occasion no issue preclusion (sometimes called collateral estoppel), unless it is clear . . . that the parties intend their agreement to have such an effect." ***Arizona v. California***, 530 U.S. 392, 414 (2000). "Only where the parties manifest an intention to give preclusive effect to the consent judgment by including detailed recitations of findings upon which the judgment is based, is issue preclusion appropriate." ***Pasada Del Rey v. Pearson (In re Pearson)***, 120 B.R. 396, 398 (Bankr. N.D. Tex. 1990) (collecting cases).

18

McKee's claims in the Chubb litigation resulted in an agreed dismissal with prejudice by both parties. (Case No. 22-cv-0110, ECF Nos. 82, 83). McKee and Chubb filed a Joint Motion to Dismiss With Prejudice, which stated that "they no longer wish to pursue the claims each has made or could have made in this suit." (Case No. 22-cv-0110, ECF No. 81). The Fifth Circuit has held that a dismissal with prejudice is a final judgment on the merits for the purposes of res judicata. *Anthony v. Marion Cnty. Gen. Hospital*, 617 F.2d 1164, 1169–70 (5th Cir. 1980). The Court, however, has determined that res judicata does not apply to McKee's claims against Blackstone. Further, the Court notes that the joint motion for dismissal with prejudice did not manifest an intention to give preclusive effect by including detailed recitations of findings upon which the judgment was based. Accordingly, the Court finds that McKee is not collaterally estopped from litigating his Counterclaims against Blackstone.

### B. First Cause of Action: Violations of the Deceptive Trade Practices Act

McKee alleges that Blackstone violated sections 17.46(b)(5), 17.46(b)(7), 17.46(b)(12), and 17.46(b)(24) of the Texas Business & Commerce Code (known as the Deceptive Trade Practices-Consumer Protection Act ("DTPA")). Tex. Bus. & Com. Code Ann. § 17.46. "The DTPA was enacted to protect consumers from unscrupulous individuals or businesses who provided inferior products and services and made misrepresentations about those goods or services." *Gabbert v. Stevens (In re Stevens)*, No. 22-05073, 2023 WL 4687827, at *10 (Bankr. W.D. Tex. July 21, 2023). To recover under the DTPA, a plaintiff must show that: (1) the plaintiff is a consumer; (2) the defendant committed a wrongful act under the DTPA; and (3) the act constituted a producing cause of the plaintiff's damage. *Crosswell v. Martinez*, 120 F.4th 177, 188 (5th Cir. 2024) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.

1995)). Rule 9(b)'s heightened pleading standard applies to McKee's DTPA claims. *See id.* at 188 (applying Rule 9(b) to DTPA claims). McKee satisfies some elements of his DTPA claims.

First, McKee alleges he is a consumer under the DTPA. "To demonstrate consumer status under the DTPA, Plaintiffs must satisfy two requirements: (1) Plaintiffs must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint." *Patek v. Alfara (In re Primera Energy, LLC)*, 579 B.R. 75, 165 (Bankr. W.D. Tex. 2017) (citing *Brittan Commc'ns v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002)). Here, McKee successfully pleads consumer status under the DTPA: (1) McKee sought to acquire services by purchase; and (2) the services purchased formed the basis of McKee's DTPA claim against Blackstone. (ECF No. 17 at 5–7). Therefore, the first element is met.

Second, McKee properly pleads that Blackstone committed a wrongful act under DTPA. McKee specifically alleges that Blackstone engaged in false, misleading, and deceptive acts under DTPA subsections 17.46(b)(5), (7), (12), and (24). Section 17.46(b)(5) prohibits entities in the conduct of any trade or commerce from representing that its services had sponsorship, approval, characteristics, use, or benefit that it did not have. Tex. Bus. & Com. Code Ann. § 17.46(b)(5). Under this subsection, McKee properly pleads that Blackstone "violated the DTPA by holding itself out to be competent and capable of measuring, documenting and presenting the McKee's insurance claim due to the frozen pipe/water damage cause of loss that occurred on or about February 16, 2021." (ECF No. 17 at 7). McKee states that, contrary to Blackstone's representations, "Blackstone was aware it did not have the ability nor expertise to take on the McKees' claim and continued to misrepresent the process that it had properly documented and

20

presented the claim to Chubb." (*Id.*). McKee, therefore, properly pleads a wrongful act under this section 17.46(b)(5) of the DTPA.

Section 17.46(b)(7) prohibits such entities from representing that their services are of a particular standard, quality, or grade when they are of another. Tex. Bus. & Com. Code Ann. § 17.46(b)(7). In McKee's pleading, it is unclear what particular standard, quality, or grade Blackstone represented its services to be. (*Id.* at 5–7). McKee merely states, "Blackstone violated the DTPA by holding itself out to be a competent and capable of measuring, documenting, and presenting the McKee's insurance claim." (*Id.* at 7). McKee, therefore, improperly pleads a wrongful act under section 17.46(b)(7).

Section 17.46(b)(12) prohibits entities engaging in trade and commerce from representing that an agreement conferred or involved rights, remedies, or obligations that it does not have or involve. Tex. Bus. & Com. Code Ann. § 17.46(b)(12). Here, there appears to be no agreement that does not confer a right it purports to confer, unless McKee is claiming that his contract with Blackstone is void. This does not appear to be the case, as McKee is bringing a breach-of-contract claim. (ECF No. 17 at 9). McKee therefore fails to plead wrongful conduct under section 17.46(b)(12).

Lastly, section 17.46(b)(24) prohibited Blackstone from failing to disclose information concerning its services that were known at the time of the transaction, and from failing to disclose such information in a manner intended to induce McKee into a transaction into which he would not have entered had the information been disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b)(24). Here, while McKee alleges facts demonstrating Blackstone misrepresented information, McKee fails to allege facts demonstrating a nondisclosure of information. (*Id.* at 5–8). Therefore, McKee properly pleads a wrongful act only under subsection 17.46(b)(5). The second element is met.

21

Third, McKee properly alleges that the wrongful acts under subsection 17.46(b)(5) was a producing cause of his damages. "Producing cause is an efficient, exciting, or contributing cause, which in a natural sequence produced injuries or damages complained of, if any." *McCarthy v. Wisch Auto Grp., Inc.*, No. 14-24-00040-CV, 2026 WL 771396, at *8 (Tex. App.—Houston [14th Dist.] Mar. 19, 2026), no pet. h.) (collecting cases). The producing cause must be "a substantial factor which brings about the injury and without which the injury would not have occurred." *Boys Club of Greater Dallas*, 907 S.W.2d at 481. The "plaintiff must show that there is some unbroken causal connection between the allegedly deceptive act and the actual damages suffered." *Bartlett v. Schmidt*, 33 S.W.3d 35, 39 (Tex. App.—Corpus Christi-Edinburg 2000, pet. denied).

Here, McKee alleges that "Blackstone violated the DTPA by holding itself out to be competent and capable of measuring, documenting, and presenting the McKees' insurance claim due to the frozen pipe/water damage cause of loss." (ECF No. 17 at 7). McKee explains, "Blackstone's inability to properly document and preserve claim evidence only became apparent when its expert testimony was stricken by a federal magistrate judge." (*Id.* at 7). Judge Chestney prohibited Pennington from testifying "as an expert as to the reasonable and necessary scope of repairs to the plumbing and electrical systems." (Case No. 22-cv-0110, ECF No. 61 at 12). Judge Chestney reasoned in part, "Pennington testified in his deposition that he believes the entire copper plumbing system in Plaintiffs' home requires complete replacement. But Pennington could not adequately identify the basis of this opinion." (*Id.*) (citations omitted). McKee therefore claims, "Blackstone's failures resulted in damages to the McKees in excess of three million dollars owed under the policy." (*Id.*). Therefore, McKee properly pleads that Blackstone's wrongful acts under

22

subsection 17.46(b)(5) were a producing cause of his damages. Accordingly, McKee's claim under subsection 17.46(b)(5) is not dismissed under 12(b)(6).

### C. Second Cause of Action: Negligence and Negligence Per Se

McKee properly pleads negligence and negligence per se. "To prevail on a common law negligence claim, a plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App.—El Paso 2012, no pet.). But "[n]egligence per se is not a separate cause of action independent of a common-law negligence cause of action. *Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. App.—El Paso 2015, no pet.). Negligence per se is "one method of proving, through proof of an unexcused violation of a penal statute designed to protect the class of persons to which the injured party belongs, the breach of duty required in any negligence cause of action, establishing negligence as a matter of law." *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex. App.—El Paso 1994, writ denied). In other words, "negligence per se may substitute for proof that a legal duty was breached." *Thomas v. Uzoka*, 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009). To prove negligence per se, a plaintiff must prove "(1) the defendant violated a statute or ordinance setting an applicable standard of care; (2) the breach was the proximate cause of the plaintiff's damages; and (3) the statute was designed to prevent an injury to that class of persons to which the plaintiff belongs." *Johnson*, 460 S.W.3d at 673–74. As examined above, while negligence per se only proves a breach of duty under common law negligence, its analysis also encompasses proximate cause, the third element of common law negligence.

Here, McKee pleads that Blackstone violated sections 4102.102 and 4102.159 of the Texas Insurance Code. (ECF No. 17 at 8–9). Section 4102.102 provides, "A license holder shall prepare

each claim for an insured represented by the license holder in accordance with the terms and conditions of the contract of insurance under which recovery is sought." Tex. Ins. Code. § 4102.102. McKee states Blackstone is a licensed public adjuster and that the Texas Insurance Code mandates this duty upon license holders such as Blackstone. (ECF No. 17 at 8). McKee further alleges Blackstone failed to fulfill this duty by failing to comply with the McKees' insurance policy in making the claim, and that McKee therefore incurred damages due to loss of recovery on amounts he was entitled to under his insurance policy. (*Id.*). Therefore, McKee properly pleads negligence and negligence per se regarding section 4102.102 of the Texas Insurance Code.

McKee also pleads negligence per se under section 4102.159 of the Texas Insurance Code. (*Id.*). Section 4102.159 of the Texas Insurance Code provides, "A license holder may not use any misrepresentation to solicit a contract or agreement to adjust a claim." Tex. Ins. Code § 4102.159. McKee alleges Blackstone had a duty not to make any misrepresentations when securing its contract with McKee. McKee states Blackstone made misrepresentations in its contract that it could prove the cause of loss. This led McKee to file suit against its insurance carrier, and McKee lost the case due to Blackstone's failure to preserve evidence. McKee properly pleads negligence and negligence per se regarding section 4102.159 of the Texas Insurance Code.

### D. Third Cause of Action: Breach of Contract

To plead a valid breach of contract claim, McKee must show "(1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to breach." ***MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.***, 25 F.4th 360, 368 (5th Cir. 2022) (quoting ***Pathfinder Oil & Gas, Inc. v. Great***

24

*W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019)). McKee's claim need not contain detailed factual allegations as to each element, but it must contain enough factual support "to raise a reasonable expectation that discovery will reveal evidence of each element" of his cause of action. *Martin Res. Mgmt. Co. v. Fed. Ins. Co.*, No. 20-40571, 2021 WL 4269565, at *3 (5th Cir. Sept. 20, 2021) (per curiam) (quoting *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 256 (5th Cir. 2009)). McKee attempts to set forth more specific allegations in his Counterclaim by pleading with more specificity in his Response. (ECF No. 31). The Court, however, must base its ruling solely on allegations set forth in the Counterclaim. *See In re GDC Technics, LLC*, 643 B.R. 417 (Bankr. W.D. Tex. 2022) (citations omitted) ("Subsequent pleading cannot cure a legally deficient claim for relief. Because a trial court may only consider the allegations set forth in a complaint at the motion to dismiss stage, setting forth more specific factual allegations in response to a motion to dismiss does not supplement the complaint."). Holding true to this bedrock principle, the Court will not consider any legal theories first articulated in McKee's Response.

First, McKee pleads that a valid contract exists. (ECF Nos. 17). McKee identifies the Agreement in his pleading. (ECF No. 17, ¶ 42). Second, McKee, however, does not plead his performance. (*Id.* at 9). In fact, McKee admits that a settlement occurred but denies that he owes payment due to Blackstone's breach. (*Id.* at 2, ¶ 15). McKee instead alleges that Blackstone first committed a material breach, which excused McKee from his nonpayment. *See, e.g.*, (ECF No. 17 at 4) ("Defendant asserts the affirmative defense of material breach by Blackstone . . . ."). "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). Rule 12(b)(6)'s standard requires the Court to accept well-pled factual allegations as true and draw

25

all reasonable inferences in the nonmovant's favor. McKee has alleged that Blackstone breached first, and that the breach was material. Assuming these allegations are true, McKee sufficiently pleads an excuse for nonperformance.

Third, McKee identifies Blackstone's obligation to document, preserve, and present a claim. (*Id.* at 6). McKee alleges Blackstone's breach by failure to document causation evidence, which "necessarily meant destruction of the evidence" that Blackstone was obligated to document and present, according to the Agreement. (*Id.*). McKee alleges that Blackstone's breach was only discovered after Judge Chestney struck expert testimony in the Chubb litigation. (*Id.*). McKee alleges damages of over three million dollars. (*Id.*)

In its Motion to Dismiss, Blackstone argues that McKee fails to identify a specific contractual provision requiring Blackstone to serve as a plumbing or electrical expert and provide litigation-ready expert testimony, or to designate additional experts in federal court. (ECF No. 22 at 10). "It is well-settled in this circuit that the plaintiff must plead what provision of the contract the defendant violated." ***Kim v. Nationwide Mutual Ins. Co.***, 614 F. Supp. 475, 492 (N.D. Tex. 2022) (collecting cases). But if the "contents of the pleading establish a reasonable or properly drawn inference that the defendant breached a certain provision (although the provision is not explicitly stated), the court will not dismiss the breach of contract claim." ***Id.*** (citation modified).

In his Response, McKee points to the Agreement's language requiring Blackstone to measure, document, and present the insurance claim. (ECF No. 31); *see also* (ECF No. 12, Ex. A) ("Commissions shall include expenses, direct costs, or any other costs accrued by Blackstone for measuring, documenting and presenting insurance claim(s)."). But even looking solely at the allegations set forth in McKee's Counterclaim, the Court finds that the contents of the pleading establish a reasonable or properly drawn inference that Blackstone breached the Agreement.

McKee refers to the Agreement generally and argues that the cause of damage to McKee's home was not properly documented. (ECF No. 17).

The Court finds that, while McKee's allegations are thin, they satisfy the minimum pleading standard at this stage. Accepting the well-pled factual allegations as true and drawing all reasonable inferences in McKee's favor, the breach of contract claim satisfies the minimum plausibility threshold required to survive Blackstone's Motion to Dismiss.

### E. Non-Dischargeability Claims

McKee requests the Court to find that his Counterclaims against Blackstone are non-dischargeable under 11 § 523(a)(2)(A) and (a)(6). (ECF No. 17 at 9–10). Blackstone argues that McKee fails to plead fraud with particularity for a valid § 523(a)(2)(A) claim and fails to plead non-conclusory facts showing Blackstone acted with the requisite state of mind for § 523(a)(6). (ECF No. 22). McKee asserts that his nondischargeability Counterclaims are sufficiently pled because they incorporate the detailed facts contained in other parts of McKee's pleadings. (ECF No. 31 at 13). McKee further states that Blackstone should have moved for a more definite statement, rather than filing the dispositive motion now before the Court. (*Id.*).

#### 1. 11 U.S.C. § 523(a)(2)(A)

McKee sufficiently pleads non-dischargeability under § 523(a)(2)(A) for his remaining DTPA claim but fails for his negligence and breach of contract claims. Section 523(a)(2)(A) prohibits the discharge of debts for money obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). "Under this definition, fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient because the provision applies only to debts obtained by frauds involving moral turpitude or intentional wrong in which the misrepresentations were knowingly and fraudulently made." ***Bailey v. Cook (In re Bailey)***, 34 F.

App'x 150, 152 (5th Cir. 2002) (per curiam). Claims for relief brought under § 523(a)(2)(A) are subject to the heightened pleading requirements of Rule 9(b) and Bankruptcy Rule 7009. *Bennett v. Lindsey (In re Lindsey)*, 733 F. App'x 190, 192 (5th Cir. 2018) (per curiam).

"The United States Supreme Court has distinguished between 'false pretenses and representations' and 'actual fraud,' and recognized two distinct paths for nondischargeability under § 523(a)(2)(A)." *K.V. Chowdary & Valley Gastroenterology Clinic, P.A. (In re Ozcelebi)*, 640 B.R. 884, 896 (Bankr. S.D. Tex 2022) (citing *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016)). "For a debtor's representation to be a false representation or false pretense, it must have been: (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party." *Id.* at 896–97; *see also RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292–93 (5th Cir. 1995) (finding the same), *overruled on other grounds as recognized by Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 832 F.3d 560 (5th Cir. 2016). On the other hand,

> [T]he elements of actual fraud under § 523(a)(2)(A) generally correspond with the elements of common law fraud in Texas and include: (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result.[7]

*Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 394 (5th Cir. 2018).

Here, Blackstone's alleged debt under section 17.46(b)(5) of the DTPA satisfies the pleading standard for § 523(a)(2)(A), as the alleged debt was obtained through false pretenses and representations. The Court notes that although DTPA section 17.46(b)(5) does not require that the misrepresentation be knowingly and fraudulently made, McKee pleads sufficient facts to demonstrate the requisite state of mind for a § 5233(a)(2)(A) determination. McKee alleges that

---

[7] But since *Ritz*, "actual fraud" under § 523(a)(2)(A) can be satisfied without a "representation." *In re Ritz*, 578 U.S. 355.

28

Blackstone made the false representation of being "competent and capable of measuring, documenting, and presenting the McKees' insurance claim due to the frozen pipe/water damage." (ECF No. 17 at 7). McKee alleges, "Blackstone was aware it did not have the ability nor expertise to take on the McKees' claim." (*Id.*). These representations described a past or current fact. (*Id.*). McKee alleges he "relied upon such representations to his detriment, resulting in substantial damages." (*Id.* at 10). Therefore, McKee properly pleads § 523(a)(2)(A) for his alleged debt under section 17.46(b)(5).

On the other hand, McKee's alleged debt under his breach of contract claim and negligence claim under section 4102.102 of the Texas Insurance Code do not satisfy § 523(a)(2)(A) as he alleges no false pretenses, false representations, or actual fraud under those causes of action. *See* (*id.* at 8–9). McKee's alleged debt under section 4102.159 of the Texas Insurance Code also fails 523(a)(2)(A) on its face, as there is no showing of intent. (*Id.*).

2. 11 U.S.C. § 523(a)(6)

Section 523(a)(6) bars a debtor's discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6). "*Based on tort principles, rather than contract*, § 523(a)(6) 'is designed to compensate the injured party for the injury suffered while not allowing the debtor to escape liability for a willful and malicious injury by resort to the bankruptcy laws.'" ***Triumphant Gold Ltd. v. Matloff (In re Matloff)***, No. 24-10439, 2025 WL 2848990, at *16 (5th Cir. Oct. 8, 2025) (emphasis added) (quoting ***Friendly Fin. Servs. Mid-City, Inc. v. Modicue (In re Modicue)***, 926 F.2d 452, 453 (5th Cir. 1991)).

"A 'willful and malicious' injury results from an act done with the actual intent to cause injury, not from an act done intentionally that causes injury." ***State of Tex. By & Through Bd. of***

29

*Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998). In other words, the debtor must have intended the injury itself, "not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). The Fifth Circuit has held that an injury is "willful and malicious" when the debtor had "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998).

> a. McKee sufficiently pleads non-dischargeability pursuant to § 523(a)(6) for his remaining DTPA claim against Blackstone.

DTPA section 17.46(b)(5) prohibits "representing that goods or services have characteristics, uses, benefits, or qualities which they do not have." Tex. Bus. Comm. Code Ann. § 17.46(b)(5). Liability under section 17.46(b)(5) does not require that the defendant make a misrepresentation knowingly, intentionally, or with knowledge that the representation was false. *Ragupathi v. Bairrington (In re Bairrington)*, 183 B.R. 754, 759 (Bankr. W.D. Tex. 1995) (collecting cases), *overruled on other grounds by Ritz*, 832 F.3d 560. "Therefore, a violation of the [DTPA] . . . based on subdivision 17.46(b)(5) . . . can be founded on behavior that lacks all of the required elements necessary to support a finding of non-dischargeability under §§ 523(a)(2)(A) or (6)." *Id.* at 761. This does not, however, preclude plaintiffs from pleading conduct that constitutes willful and malicious acts under § 523(a)(6) that also constitute a deceptive trade practice under section 17.46(b)(5). *Id.*

Here, McKee alleges that "Blackstone was *aware* it did not have the ability nor expertise to take on the McKees' claim and continued to misrepresent the process that it had properly documented and presented the claim to Chubb." (ECF No. 17 at 7) (emphasis added). Additionally, McKee asserts that "Blackstone's *awareness* that it did not have the capability of

30

properly presenting or adding to the value" of McKee's claim entitles McKee "to enhanced damages under the DTPA for Blackstone's *knowing* and unconscionable conduct." (*Id.*) (emphases added). McKee also alleges that "Blackstone *knew* it could not effectuate processing the claim," but nevertheless entered into the Agreement with McKee "to gain a 10% interest in the claim that ultimately adjusted by Chubb despite Blackstone's interference." (*Id.*) (emphasis added).

Based on these allegations, McKee has asserted that Blackstone took actions either with the intention of causing harm or that were substantially certain to cause harm to McKee. McKee pleads conduct that may constitute willful and malicious acts under § 523(a)(6) that also may constitute a deceptive trade practice under section 17.46(b)(5).

> b. *McKee sufficiently pleads nondischargeability pursuant to § 523(a)(6) for his breach of contract claim against Blackstone.*

The Fifth Circuit has established that "a knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under § 523(a)(6), regardless of the existence of separate tortious conduct." ***Williams v. Int'l Brotherhood of Elec. Workers Local 520 (In re Williams)***, 337 F.3d 504, (5th Cir. 2003). "Contractual debts are excepted from discharge when those debts result from an intentional or substantially certain injury." ***In re Matloff***, 2025 WL 2848990, at *16 (citation modified). The plaintiff, however, must prove more than an intentional breach of contract; there must be "explicit evidence that a debtor's breach was intended or substantially certain to cause the injury to the creditor." ***In re Williams***, 337 F.3d at 511. The dischargeability determination under § 523(a)(6) "depends upon the knowledge and intent of the debtor at the time of the breach." ***Id.*** at 510. But negligent or reckless conduct is not willful and malicious. ***Kawaauhau v. Geiger***, 523 U.S. at 64.

McKee pleads that Blackstone took actions with "either an objective substantial certainty of harm to McKee and/or Blackstone had a subjective motive to cause harm to McKee." (ECF

31

No. 17, ¶ 57). Specifically, McKee asserts that because Blackstone entered into the contract with the knowledge that it could not perform its obligations, there was substantial certainty or motive to cause harm to McKee. *See* (Hearing on Motion to Dismiss, Audio 9:06–9:07:45, April 1, 2026) (arguing that "entering into an agreement with no ability or no intent to comply with is objectively substantially certain to cause harm to somebody"). Therefore, the Court finds that McKee has pled a plausible claim for relief under § 523(a)(6) regarding his allegations that Blackstone either intended to cause harm or was substantially certain that it would cause harm to McKee through a breach of the Agreement.[8]

### III.    Leave to Amend

Blackstone requests the Court to dismiss McKee's claims with prejudice. (ECF No. 27, ¶ 52). In his Response, McKee requests the Court, in the event that it finds McKee's pleading insufficient, to allow him to amend his claims as provided by the Federal Rules of Bankruptcy Procedure. (ECF No. 31 at 13–14).

Bankruptcy Rule 7015 incorporates Federal Rule of Civil Procedure 15 into adversary proceedings. Fed. R. Bankr. P. 7015. Rule 15 allows a party to amend its pleading once as a matter of course 21 days after serving it, 21 days after service of a responsive pleading, or 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a)(1)(B).

Here, McKee served his Answer, along with his Counterclaims against Blackstone on January 23, 2026. (ECF No. 17). Exactly 21 days later, Blackstone filed its Rule 12(b) Motion on February 13, 2026. (ECF No. 22). McKee had until March 6, 2026, to amend his pleading. Instead, McKee requested an order extending the time to file a response to Blackstone's 12(b) Motion, which the Court granted. (ECF Nos. 28, 29). McKee then filed his Response pursuant to the

---

[8] Additionally, McKee's alleged debts under his negligence claim do not satisfy § 523(a)(6). Negligent or reckless conduct is not willful and malicious.

extended deadline on March 13, 2026. (ECF No. 31). Therefore, McKee may not amend his pleading as a matter of course.

When the time for amendment as of right has passed, Rule 15 otherwise allows a party to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule also states that "[t]he court should freely give leave when justice so requires." *Id.* The Fifth Circuit has emphasized that Rule 15(a) "evinces a bias in favor of granting leave to amend." ***Dussouy v. Gulf Coast Inv. Corp.***, 660 F.2d 594, 597 (5th Cir. 1981). But "a grant of leave is not automatic." ***In re Lindsey***, 733 F. App'x at 193. A court should not deny leave to amend "absent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party." ***Mayeaux v. La. Health Serv. & Indem. Co.***, 376 F.3d 420, 425 (5th Cir. 2004) (citing ***Forman v. Davis***, 371 U.S. 178, 182 (1962)).

Additionally, the Court may deny leave to amend if amendment would be futile. ***Farmers Tex. Cnty. Mutual Ins. Co. v. 1st Choice Accident & Injury, L.L.C.***, 168 F.4th 271, 279 (5th Cir. 2026). An amendment is futile if the amendment "would fail to state a claim upon which relief could be granted." ***Stripling v. Jordan Prod. Co.***, 234 F.3d 863, 873 (5th Cir. 2000); *see also* ***Terry v. Tex. Partners Bank (In re Chris Pettit & Assocs.)***, 670 B.R. 602, 611 (Bankr. W.D. Tex. 2025) ("When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable."). Thus, the standard to determine whether an amendment would be futile is "the same standard of legal sufficiency as applied under Rule 12(b)(6)." ***Id.***

The Court declines to allow McKee to re-plead his dismissed claims. At the hearing, the Court asked McKee's counsel to describe the substantive allegations he would add to his claims if

the Court would permit amendment. *See* (Hearing on Motion to Dismiss, Audio 9:06:07–16, April 1, 2026) ("What would you replead? Accepting that it's your argument to dismiss with leave to amend, what would you replead?"). In response, McKee's counsel explained how § 523(a)(6) is sufficiently pled. *See* (*id.* at 9:05:50–10) (arguing the pleading for the § 523(a)(2)(A) claim overlaps factually with the § 523(a)(6)). McKee's counsel expressed that he believed the appropriate remedy is to re-plead without describing any substantive allegations that he could or would add to his pleadings, if so permitted.[9]

Additionally, McKee did not file a motion for leave to amend his Counterclaims, nor did he comply with Local Rule 7015 by attaching "a complete, redline copy of the amended or supplemental pleading [he] proposes to file." L. Rule 7015(a). "The failure to attach a copy may be grounds for denial of relief, without further hearing." *Id.* "Because federal trial courts have considerable latitude in applying their own rules, and because Local Rule 7015 explicitly permits summary denial relief when a movant fails to file a proposed amended complaint," the Court declines to grant McKee's informal request to amend his insufficient pleadings. ***In re Lindsey***, 733 F. App'x at 194 (affirming bankruptcy court's denial of such relief based on similar procedural defects). Because a grant of leave is not automatic, the Court declines to grant McKee's request to re-plead his defective claims.

**CONCLUSION**

For the reasons stated herein,

IT IS THEREFORE ORDERED that Plaintiff Blackstone Claim Services, Inc. Rule 12(b)(1) and 12(b)(6) Motion to Dismiss McKee's Counterclaims (ECF No. 22) is GRANTED IN PART and DENIED IN PART.

---

[9] Further, McKee's third-party claims against Pennington are dismissed for lack of subject matter jurisdiction. These claims have an incurable defect. Thus, amending McKee's claims against Pennington would be futile.

IT IS FURTHER ORDERED that Defendant Aaron McKee's claims against Blackstone pursuant to Tex. Bus. & Com. Code Ann. §§ 17.46(b)(7), (12) and (24) are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant Aaron McKee's third-party claims against Gary H. Pennington (ECF No. 17 at 10–15) are DISMISSED WITH PREJUDICE.

# # #